IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

MEGAN SUE LINDEMANN,

                Plaintiff,

v.                                              OPINION and ORDER

ANDREW SAUL,                                    18-cv-932-jdp
Commissioner of the Social Security Administration,

                Defendant.[1]

---

Plaintiff Megan Sue Lindemann seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Lindemann not disabled within the meaning of the Social Security Act. Lindemann's primary objections on appeal are that Administrative Law Judge Debra Meachum (ALJ) erred by failing to adequately consider evidence related to: (1) concentration, persistence, and pace; and (2) the ability to stand for long periods of time. The court rejects each of Lindemann's contentions and affirms the commissioner's decision. The oral argument scheduled for July 9, 2019, is cancelled.

ANALYSIS

Lindemann contends that she qualified for disability benefits from 2009 to 2012. The ALJ found that Lindemann suffered from the following severe impairments: spine disorders, learning disorder, affective disorder, and anxiety disorder. R. 16.[2] The spine disorder is the result of a 2009 car accident, which caused Lindemann to break seven thoracic vertebrae. R. 19.

---

[1] The court has amended the caption to reflect the appointment of the new commissioner.

[2] Record cites are to the administrative transcript, located at Dkt. 10.

Neither the parties nor the ALJ explained the causes of the mental impairments or identified any specific diagnoses.

In her residual functional capacity assessment (RFC), the ALJ found that Lindemann was capable of performing light work, with other physical restrictions not relevant to the appeal. R. 18. This meant that Lindemann qualified for jobs that required "a good deal" of standing or walking. 20 C.F.R. § 404.1567(b). As for mental limitations, the ALJ found that Lindemann could "perform unskilled work involving simple, routine, and repetitive tasks with no fast-paced or production line tasks and only occasional changes in the work setting . . . . She could sustain attention for simple, routine, and repetitive tasks for at least two-hour segments." R. 18. Lindemann challenges the ALJ's findings as to both her mental and physical limitations.

## A. Concentration, persistence, and pace

Lindemann raises the following objections to the ALJ's findings regarding Lindemann's mental limitations: (1) the RFC is inconsistent with circuit law on concentration, persistence, and pace; (2) the ALJ gave great weight to the opinion of Jan Jacobson (a state agency psychologist), but failed to include all of Jacobson's restrictions in the RFC; and (3) the ALJ failed to define "fast-paced or production line tasks."

Lindemann's first argument rests on the ALJ's finding that Lindemann had "moderate limitations in . . . concentration, persistence, or pace." R. 22. She cites cases such as *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010), for the proposition that "the Seventh Circuit has long held that a claimant's moderate concentration, persistence, or pace difficulties are not properly captured by limitations to simple, routine, repetitive tasks." Dkt. 13, at 9–10.

But the court of appeals did not hold in *O'Connor-Spinner* or any other case that a restriction to "simple, routine, and repetitive work" is never an accurate reflection of moderate

limitations in concentration, persistence, or pace. Rather, the court held that the ALJ's RFC assessment in *that* case was not an accurate reflection of the plaintiff's limitations. Lindemann's interpretation of the case law rests on the assumption that the phrase "moderate limitations in concentration, persistence, or pace" means the same thing across all cases, but that is incorrect. As this court has explained before, "the phrase is simply a general category" that "must be translated into particular limitations"; the phrase "does not necessarily communicate . . . what a claimant can or cannot do." *Rossenbach v. Colvin*, No. 13-cv-435-bbc, 2014 WL 1729096, at *2 (W.D. Wis. Apr. 30, 2014).[3] This is why the RFC does not say "moderate limitations in concentration, persistence, or pace." That would mean nothing to a vocational expert (or to anyone else).[4]

When the court of appeals has concluded that an ALJ erred by failing to incorporate limitations related to concentration, persistence, and pace, it was not because the ALJ failed to use particular "magic words" in her decision. *Cihlar v. Berryhill*, 706 Fed. App'x. 881, 884 (7th Cir. 2017). Rather, it was because the ALJ failed to account for evidence that supported a particular limitation. *E.g., Lanigan v. Berryhill*, 865 F.3d 558, 566 (7th Cir. 2017); *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016). Thus, when considering whether the ALJ's assessment of a claimant's RFC is supported by substantial evidence, the court must do more

---

[3] This court has made the same point in other cases. *E.g.*, *Zeatlow v. Berryhill*, No. 18-cv-570-jdp, 2019 WL 494625, at *1 (W.D. Wis. Feb. 8, 2019); *Souter v. Berryhill*, No. 18-CV-484-JDP, 2019 WL 259120, at *2 (W.D. Wis. Jan. 18, 2019); *Rabitoy v. Berryhill*, No. 17-CV-495-JDP, 2018 WL 1010219, at *2 (W.D. Wis. Feb. 21, 2018).

[4] *See* SSA, Program Operations Manual System (POMS) DI 24510.065(B)(1)(c), *available at* https://secure.ssa.gov/poms.nsf/lnx/0424510065 ("Include no severity ratings or nonspecific qualifying terms (e.g., moderate, moderately severe) to describe limitations. Such terms do not describe function and do not usefully convey the extent of capacity limitation.").

than simply look at the words used in the RFC. Instead, the court must determine whether the restrictions in the RFC accurately reflect all of the claimant's limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

So the RFC in this case is not inadequate simply because it includes a restriction to "unskilled work involving simple, routine, and repetitive tasks." The question is whether those restrictions are an accurate reflection of Lindemann's limitations.

Lindemann points to only one limitation that she says is not reflected in the RFC. This is the subject of her second argument. Lindemann cites the following statement from Jacobson:

> Claimant is able to sustain attention for simple, repetitive tasks for extended periods of two hour segments over the course of a routine workday/workweek within acceptable attention, concentration persistence and pace tolerances. Unable to do so for moderately detailed/complex tasks requiring sustained attention.

R. 118. Because the ALJ gave great weight to Jacobson's opinion, Lindemann says that the RFC should have included a restriction that Lindemann "could not sustain the attention necessary to complete detailed tasks in two-hour segments." Dkt. 13, at 12.

This is a puzzling argument. Although the RFC did not say that Lindemann was unable to carry out "detailed instructions" for two hours, it did restrict Lindemann to carrying out "simple, routine, and repetitive tasks" for two hours. Lindemann doesn't explain the difference between these two restrictions and the court doesn't see one. If Lindemann is limited to simple, routine, and repetitive tasks, then it follows that she is unable to perform detailed tasks. Jacobson's statement itself seems to acknowledge that the different types of tasks are two sides

4

of the same coin. Lindemann doesn't provide any examples of tasks that would qualify as both "detailed" and "simple, routine, and repetitive."[5]

Lindemann's third objection is that the ALJ didn't define what she meant by "fast-paced or production line tasks." She cites *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015), in which the court said it was "problematic" that the ALJ did not define "fast paced" in the RFC. But the court is not persuaded that *Varga* requires a remand, for three reasons. First, *Varga* doesn't say that an ambiguous term in the RFC is a sufficient basis on its own to find that the ALJ's decision is not supported by substantial evidence, which is the relevant standard of review. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Second, in this case, the ALJ provided the additional context of "no . . . production line tasks," which provides more concrete guidance for the types of jobs that are off limits. Third, and most important, Lindemann doesn't identify any pace-related limitations that she has that would require a more precise definition. A claimant is not entitled to a remand if she does not "identify medical evidence that would justify further restrictions." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016).[6]

---

[5] Lindemann points out that the vocational expert found that someone with the restrictions identified in the RFC could perform jobs such as routing clerk and addresser. Lindemann says that the identified jobs require "reasoning level 2," which means that the employee can carry out "detailed" instructions, which is inconsistent with her limitations. Dkt. 13, at 12–13. But that is not an objection to the RFC, it is an objection to the vocational expert's testimony. As the commissioner observes (and Lindemann doesn't dispute in her reply brief), Lindemann forfeited that objection because her counsel failed to raise it at the administrative hearing. *See Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016).

[6] In her reply brief, Lindemann cites her own testimony in an attempt to show that she has pace-related limitations, but that argument is forfeited because it wasn't included in her opening brief. In any event, the testimony she cites relates to her memory and her ability to concentrate. Dkt. 15, at 6. She doesn't explain how those limitations affect the pace at which

So each of Lindemann's challenges to the ALJ's handling of her mental limitations fail. Lindemann isn't entitled to a remand on this ground.

**B. Sit/stand option**

Lindemann contends that the ALJ erred by failing to include a sit/stand option in the RFC in light of her testimony that she could not stand for more than 30 minutes at a time. R.62. She also relies on opinions submitted by Philip Haber, Mark Larkins, and Barbara Seizert.

Lindemann's reliance on her own testimony fails because she doesn't challenge the ALJ's credibility determination.[7] The ALJ concluded that she would not credit Lindemann's statements about her ability to stand for 30 minutes because it was inconsistent with other statements that she was walking two miles at a time for exercise and that she served as a chaperone on her children's field trips, which she acknowledged required her to walk, stand, and sit for more than 30 minutes at a time. R. 23. The ALJ is entitled to rely on a claimant's inconsistent statements, *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017), so that part

---

she could work. And even if she had, she doesn't challenge the ALJ's handling of her subjective complaints, as discussed in the next section.

[7] Lindemann does say that the ALJ applied the wrong legal standard by stating that Lindemann's statements were "not entirely consistent" with the evidence. R. 19. Although the court of appeals has criticized similar language repeatedly, *e.g.*, *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016), the court has also said that an ALJ's use of incorrect boilerplate is not reversible error "if the ALJ otherwise identifies information that justifies the credibility determination." *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014). In this case, the ALJ correctly identified the two-step process for evaluating a claimant's subjective complaints. R. 18 (ALJ must first determine whether the claimant has an impairment that could produce her symptoms and then evaluate the severity of those symptoms). And the ALJ explained her reasons for questioning Lindemann's statements about the intensity, persistence, and limiting effects of her symptoms.

of the ALJ's analysis is not "patently wrong." *Id.* ("We give the ALJ's credibility finding 'special deference' and will overturn it only if it is 'patently wrong.'").

Haber is a psychologist who gave Lindemann a vocational and psychological evaluation. Included in his report were opinions about Lindemann's ability to engage in various physical tasks, including sitting and standing for extended periods. R. 854–61. But the ALJ declined to credit those opinions for multiple reasons, including that they were outside Haber's area of expertise. Lindemann doesn't deny that Haber lacked the qualifications to assess her physical abilities and she doesn't otherwise respond to this argument in her reply brief. The court sees no error in the ALJ's declining to credit opinions that a treatment provider wasn't qualified to give.

Larkins is a neurosurgeon who Lindemann retained to provide an opinion in a lawsuit she filed related to her car accident. R. 898. One of his findings was that Lindemann "needs to be allowed to change positions frequently." R. 910. The ALJ gave this opinion little weight because: (1) as a doctor who had been retained for a lawsuit, Larkins had the potential to be biased; (2) Larkins relied "at least in part" on Lindemann's subjective statements; and (3) Larkins's opinion was inconsistent with evidence that Lindemann had reported "good pain relief with medication and a Lidoderm patch." R. 27.

Lindemann doesn't address the ALJ's third reason for rejecting Larkins's opinion, which is reason enough to uphold this aspect of the ALJ's decision. In any event, Lindemann's challenges to the ALJ's other reasons fail as well. As for the ALJ's concerns about bias, Lindemann cites *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011), in which the court stated that "the fact that relevant evidence has been solicited by the claimant or her representative is not a sufficient justification to belittle or ignore that evidence." But *Punzio* is not instructive.

7

In that case, the ALJ directed the claimant's lawyer to supplement the record to fill in gaps in the medical evidence. *Id.* at 708. In response, the lawyer "solicited" an opinion from the claimant's treating psychiatrist. *Id.* That is not what happened in this case. Larkins wasn't Lindemann's treating physician, but was hired for the purpose of obtaining an opinion for Lindemann in a separate lawsuit, so he was essentially a retained expert. Under these circumstances, it was not unreasonable for the ALJ to consider Larkins's potential bias. *See Braun v. Lorillard Inc.,* 84 F.3d 230, 237 (7th Cir. 1996) (fact that expert was hired by litigant is relevant to bias).[8]

As for Larkins's reliance on Lindemann's subjective complaints, that is a valid reason for rejecting a physician's opinion. *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013). Lindemann says that Larkins also based his opinion on her diagnosis of thoracic outlet syndrome and her scalenectomy surgeries, Dkt. 15, at 13, but the fact that Lindemann suffers from a particular condition and had surgery for it doesn't show what her actual limitations are. In any event, she doesn't point to any part of Larkins's report in which he connected her need to change positions to a particular diagnosis or surgery. Rather, Larkins stated that he believed Lindemann needed to change positions because "she is very uncomfortable and has limited range of motion." R. 910. It was not error for the ALJ to reject Larkins's opinion.

---

[8] Lindemann says that the ALJ should have considered the bias of the state agency consultants because they are paid by the Social Security Administration. But Lindemann cites no authority in support of this proposition and she cites no evidence that the consultants are instructed or encouraged to render opinions against the claimant or have any incentive to do so. As the commissioner points out, the proceedings at the administrative level are not adversarial. *See* 20 C.F.R. § 404.900(b) ("In making a determination or decision in your case, we conduct the administrative review process in an informal, nonadversarial manner.").

Seizert is a physiatrist (a physician specializing in physical medicine and rehabilitation) who treated Lindemann twice, once in July 2010 and again in October 2010. In a short letter summarizing Lindemann's limitations, Seizert wrote "[o]ff feet after 1 hr for a break." R. 823. The ALJ did not give any weight to this opinion for two reasons: (1) it was inconsistent with objective findings of Lindemann's previous physiatrist, which were normal; (2) Seizert's own treatment notes indicated that "most of" Lindemann's problems were the result of deconditioning, which cannot serve as the basis for a disability finding. R. 25, 30.[9] Lindemann doesn't address either of these reasons in her briefs, and the court doesn't see a reason to reject them.

Instead of addressing the reasons that the ALJ provided, Lindemann says that the ALJ should have adopted Seizert's opinion because it was consistent with other evidence in the record. She cites documents showing that she suffered from symptoms such as reduced range of motion, shoulder pain, and numbness and she criticizes the ALJ for failing to discuss the documents in the context of considering Seizert's opinion. Dkt. 13, at 18. But an ALJ need not discuss every document in the record (which in this case was 1,172 pages). *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) ("The ALJ need not, however, discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability."). And Lindemann fails to explain how any of the documents she cites are inconsistent with the RFC in this case.

---

[9] Under SSR 96-8, "[a]ge and body habitus are not factors in assessing RFC. It is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms, due to such factors as age and natural body build, and the activities the individual was accustomed to doing in his or her previous work."

The court concludes that the ALJ adequately explained why she declined to include a sit/stand option in the RFC.

**C. Other opinion evidence**

Lindemann also challenges the way that the ALJ generally handled the opinion evidence. But the only issue that Lindemann raises that the court has not already discussed is that the ALJ failed to consider Larkins and Seizert's specialties. The ALJ noted that Seizert specialized in rehabilitation and that Larkins was a neurosurgeon, but the ALJ didn't place any weight on their areas of practice.

A medical provider's specialty is only one of several factors that an ALJ should consider in assigning weight to an opinion. 20 C.F.R. § 404.1527(c). Lindemann doesn't deny that the state agency consultants and the other experts on which the ALJ relied were qualified to give their opinions and she cites no authority for the view that an ALJ must give more weight to an opinion if it comes from a specialist. As discussed above, the ALJ explained her reasons for declining to give more weight to Larkins and Seizert's opinions, such as potential bias, reliance on subject complaints, and internal inconsistency. Because those reasons would apply equally regardless of the doctor's specialty, the court concludes that the ALJ did not commit reversible error in failing to give additional weight to Larkins and Seizert's specialties.

**D. Conclusion**

The evidence before the ALJ was not one-sided. The ALJ could have relied on Lindemann's testimony and opinions from some of Lindemann's treatment providers to find that Lindemann was disabled. But, as the Supreme Court recently emphasized, the standard of review in a Social Security appeal is deferential. *Biestek*, 139 S. Ct. at 1152 ("[T]he threshold for . . . evidentiary sufficiency [of an ALJ's decision] is not high."). In a thorough opinion, the

10

ALJ gave "good reasons" for rejecting the testimony and opinions, which is all she was required to do. *Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018).

The court concludes that the ALJ's decision is supported by substantial evidence.

ORDER

IT IS ORDERED that that the decision of the commissioner is AFFIRMED and the oral argument is CANCELLED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered July 2, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge